UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN P. MORGAN, III,

        Plaintiff,                  Civil Action No. 14-10488

            v.                  District Judge JOHN CORBETT O'MEARA
                                 Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff John P. Morgan, III ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant"). Plaintiff, previously found disabled as of May 1, 2003, disputes Defendant's decision that he was "no longer disabled as of May 1, 2011" (Tr. 23). The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Docket #23] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #19] be DENIED.

## PROCEDURAL HISTORY

      In October, 2003, Plaintiff was found disabled as of May 1, 2003 (Tr. 23). On May

9, 2011, Defendant determined that Plaintiff was no longer disabled as of May 1, 2011 (Tr. 69-74). Plaintiff then requested an administrative hearing, held August 14, 2012 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Melvyn B. Kalt  (Tr. 34). Plaintiff, represented by Frank Cusmano, testified (Tr. 37-57), as did Vocational Expert ("VE") Kimberly Warner (Tr. 57-60). On October 3, 2012, ALJ Kalt found that Plaintiff's disability ended on May 1, 2011 (Tr. 30). On October 28, 2013, the Appeals Council denied review (Tr. 6-8). Plaintiff filed suit in this Court on January 31, 2012.

## BACKGROUND FACTS

Plaintiff, born October 11, 1980, was just short of his 32nd birthday when ALJ Kalt issued his decision (Tr. 30, 142). He completed 12th grade (Tr. 37-38). He worked previously as a newspaper deliverer, photographer, and web designer (Tr. 152). He alleges continuing disability due to bipolar disorder (Tr. 131).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

He attended school through 11th grade but received home school instruction in what would have been his senior year (Tr. 37). He consented to home schooling because he wanted to spend more time "door-to-door witnessing" (Tr. 38). Between 1999 and 2002, he worked in computer graphics at a small computer service company (Tr. 38). He became the "fall guy" for the company's problems, after which he was terminated (Tr. 39). Around the same time he broke up with his girlfriend (Tr. 39). The combination of career and personal

problems resulted in overspending and erratic sleeping patterns after which he was admitted for a six-day psychiatric in-patient stint (Tr. 39). On another occasion, he spent 24 days at an inpatient facility (Tr. 40). He was hospitalized several times due to his failure to take his psychotropic medication (Tr. 40). His former boss had asked him to return to work on the condition that he would continue to take his medication, but Plaintiff lost the job a second time after declining to take his medication (Tr. 40). Following the computer job, he was employed part-time for about 18 months with a marketing research company as a telemarketer (Tr. 41). Although the job was part-time, he sometimes required a break "from the customers" (Tr. 42). In 2008 and 2009, he worked 16 hours a week as a patient transporter at a hospital (Tr. 42). He quit in part because his productivity rate was deemed low, combined with his fear that he would lose his temper with the patients (Tr. 43).

Plaintiff experienced the medication side effects of dry mouth and diarrhea (Tr. 45). The medication, prescribed so he would not "do anything outrageous" slowed down his thought processes (Tr. 45). He attended Kingdom Hall meetings twice a week lasting approximately one hour and 45 minutes (Tr. 45-46). In addition, he was involved in a "door-to-door" ministry two days a week between 9:00 a.m. and 3:00 p.m. (Tr. 46-47).

He experienced two to three good days a week and four bad ones (Tr. 48). "Bad" days included interrupted sleep, dry mouth, diarrhea, and a general disinclination to change out of his pajamas (Tr. 49). He spent most of such days watching television (Tr. 49). Based on his mixed experience with part-time work, he would be unable to perform full time work (Tr.

-3-

50).  He lived with his parents and two sisters (Tr. 51).  He and his sisters were responsible for a portion of the household chores (Tr. 51).  On occasion, he had to be reminded to complete his share of the chores (Tr. 51-52).  He avoided shopping trips due to his fear of placing himself in situations where he would be re-admitted to a mental hospital (Tr. 52).  He was currently under the care of a psychiatrist and was also receiving counseling (Tr. 53).

In response to questioning by his attorney, Plaintiff testified that he would be unable to return to his work with computer graphics because he had not "kept up" with recent software changes (Tr. 55-57).

### B.    Medical Evidence

### 1.  Evidence Predating the October 7, 2003 Disability Finding

In December, 2002, Plaintiff was admitted for the first time to Harbor Oaks Hospital for inpatient psychiatric treatment (Tr. 178).  He was diagnosed with "schizoaffective disorder, bipolar type" and assigned a GAF of 25[1] (Tr. 179).  Plaintiff reported "hyperverbal thinking, racing thoughts, and difficulty sleeping" (Tr. 178).  February, 2003  records by Harbor Oaks Hospital state that Plaintiff's parents presented him for re-admission after he became "very explosive and very grandiose, with hypomanic and agitated behavior" (Tr. 175).  Mental examination records note a "bizarre and labile" affect (Tr. 176).  He was

---

[1]A GAF score in the range of 21–30 is associated with "considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment OR inability to function in almost all areas." *Diagnostic and Statistical Manual of Mental Disorders–Text Revision*, 34 (" *DSM–IV–TR* ") (4th ed.2000)

assigned a GAF of 20[2] (Tr. 176).

In September, 2003, Leonard Balunas Ph.D., performed a non-examining Psychiatric Review Technique on behalf of the SSA, finding that Plaintiff met Listing 12.04 (affective disorders) and was thus disabled (Tr. 182, 190); 20 C.F.R. Pt. 404, Subpt, P, App. 1 § 12.04. Dr. Balunas found the presence of moderate limitation in activities of daily living and marked limitations in social functioning and concentration, persistence or pace (Tr. 190).

## 2. Evidence Created Subsequent to the Disability Finding

In January, 2010, psychiatrist Tai Chung, M.D. found that the condition of bipolar disorder was in full remission (Tr. 240). Dr. Chung assigned Plaintiff a GAF of 56[3] (Tr. 240). An accompanying psychiatric evaluation was unremarkable (Tr. 235-239). April, July, and October, 2010 evaluations were also unremarkable (Tr. 217-234). October, 2010 records state that Plaintiff had experienced "several years of stability on generic Lithium" and "no hospitalizations since 2003 . . ." (Tr. 216). He was deemed independent in most areas of functioning but required training in structuring his time and handling future plans (Tr. 211). The same evaluation stated that he needs reminders to complete household chores and monitor his health (Tr. 211). A December, 2010 assessment indicates that Plaintiff's condition had not changed since October, 2010 (Tr. 200-205).

---

[2]A GAF score of 11–20 indicates "some danger of hurting self or others OR occasionally fails to maintain minimal personal hygiene OR gross impairment in communication." *DSM–IV* at 34.

[3]A GAF score of 51–60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *DSM–IV* at 34.

March 30, 2011 records by Macomb County Community Mental Health state that Plaintiff was currently taking Lithium to control symptoms of bipolar disorder (Tr. 194). Consistent with the reports from January, 2010 and forward, he exhibited a normal thought process and was neatly dressed (Tr. 195). His affect and mood were normal and he denied depression or anxiety (Tr. 196-197). He denied the inability to form friendships (Tr. 197). His condition was deemed "stable" with the need for continuing medication (Tr. 198). Dr. Chung found that the bipolar disorder was in "full remiss[ion]" (Tr. 199). He noted that Plaintiff had been "psychiatrically stable" since 2003 (Tr. 199). He assigned Plaintiff a GAF of 56 (Tr. 199).

A May, 2011 Psychiatric Review Technique by Jerry Csokasy, Ph.D. found that Plaintiff no longer met the requirements for disability under Listing 12.04 (Tr. 241, 244). Based on the newer treating records, he found that Plaintiff experienced mild limitation in activities of daily living and social functioning; and moderate limitation in maintaining concentration, persistence, or pace (Tr. 251). Dr. Csokasy found that the psychiatric records did not show "significant symptoms" (Tr. 253). He found that Plaintiff was able to perform "simple/routine tasks on a sustained basis" (Tr. 253). In an accompanying Mental Residual Functional Capacity Assessment, Dr. Csokasy found that Plaintiff experienced moderate limitation in the ability to carry out detailed instructions, maintain attention for extended periods, and respond appropriately to workplace changes (Tr. 255-256). He reiterated that Plaintiff could perform "simple/routine tasks on a sustained basis" (Tr. 257).

-6-

Medical treating notes from the same month state that Plaintiff did not experience current asthma symptoms (Tr. 259). A physical examination was unremarkable (Tr. 260). The following month, Dr. Balunas performed a renewed Psychiatric Review Technique, finding that Plaintiff experienced moderate limitation in concentration, persistence, or pace due to the presence of bipolar disorder (Tr. 268, 271, 278). He noted that a recent examination showed that the condition of bipolar was in "full remission" (Tr. 280). In an accompanying Mental Residual Functional Capacity assessment, Dr. Balunas found that Plaintiff experienced moderate limitation in the ability to understand, remember, and carry out detailed instructions and in maintaining concentration for extended periods (Tr. 264). September, 2011 treatment records by Antonio H. Nucum, Jr., D.O. state that Plaintiff's current GAF was "55-60" (Tr. 294). In April, 2012, Dr. Nucum stated that Plaintiff was "unable to maintain gainful employment" due to a diagnosis of bipolar disorder (Tr. 298).

## C. Vocational Expert Testimony

VE Kim Warner classified Plaintiff's prior work as a computer programmer as skilled at the sedentary level of exertion[4] (Tr. 58). The VE stated that if Plaintiff's testimony were

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

fully credited, he would not be able to work as a programmer (Tr. 58). The VE found that if Plaintiff were limited to work "in a relatively clean atmosphere; simple work involving no more than one, two, or three-step operations and that did not involve any concentrated interaction with others [with] incidental contact with coworkers and supervisors but nothing that required a consistent interaction," he could perform the unskilled, sedentary work of an addressing clerk (1,000 jobs in existence in the Southeast Michigan region) and document preparer (4,500) as well as the unskilled, exertionally light work of a sorter (8,000) (Tr. 59). The VE found that if Plaintiff's testimony were fully credited, he would be unable to perform any full-time work as a result of "bad days" resulting in mental slowness and motivational problems (Tr. 59). In response to Plaintiff's attorney, the VE testified that the need to be "off task" for up to 20 percent of the workday would be "work preclusive" (Tr. 60).

### D.    The ALJ's Decision

Comparing the October 7, 2003 comparison point decision ("CPD") to the newer evidence, the ALJ found that Plaintiff experienced the severe impairments of "bipolar and asthma" but as of May 1, 2011, the condition of bipolar syndrome no longer met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 25). He found that Plaintiff experienced moderate deficiencies in daily living, social functioning, and concentration, persistence, or pace (Tr. 26-27). He cited Macomb County Community Mental Health records from January, 2010 to March, 2011 showing that Plaintiff's bipolar

disorder was "in full remission with a GAF of 56" (Tr. 25).  He noted that Plaintiff's

condition was described as "'stable'" by the treating sources (Tr. 25).  ALJ Kalt found  that

Plaintiff  retained the following residual functional capacity ("RFC"):

> [A] full range of work at all exertional levels but with the following
> nonexertional limitations: He was limited to the performance of simple,
> unskilled tasks in a clean atmosphere with no concentrated interaction with
> others (Tr. 27).

Citing the VE's testimony, the ALJ found that although Plaintiff was unable to perform his

past relevant work, he could work as a clerk, document preparer, and sorter (Tr. 30).  The

ALJ noted that Plaintiff's allegations of ongoing disability were undermined by the ability

to care for his personal needs, perform a range of household chores and yard work, attend

religious meeting, engage in a door-to-door ministry, shop, and exercise (Tr. 28).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine

whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of*

*Health and Human Services,* 757 F.2d 803, 804 (6ᵗʰ Cir.  1985).  Substantial evidence is more

than a scintilla but less than a preponderance.  It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts."  *Mullen v. Bowen,*   800 F.2d 535, 545 (6ᵗʰ  Cir.

1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

-10-

## ANALYSIS

### A.  A Medical Improvement

Plaintiff argues that the finding that he experienced a "medical improvement" justifying the termination of benefits is not well supported. *Plaintiff's Brief,* 7-13, *Docket #19.*

In contrast to an initial disability determination, "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Kennedy v. Astrue,* 247 Fed.Appx. 761, 765, 2007 WL 2669153, *4 (6th Cir. September 7, 2007)(*citing Griego v. Sullivan,* 940 F.2d 942, 944 (5th Cir.1991)).   In a cessation of benefits case, "the central question is whether the claimant's medical impairments have improved to the point where she is able to perform substantial gainful activity." *Kennedy* at 764; 42 U.S.C. § 423(f)(1).   A "medical improvement" is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement must be supported by an improvement "in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Id.*; *Kennedy* at 765.   Aside from the "medical improvement" requirement, Commissioner must  show that the previously disabled Plaintiff is capable of performing substantial gainful activity.  *See* "Framework for Disability Determinations," *above*; *Kennedy* at 765; 20 C.F.R. § 404.1594(b)(5) and (f)(7).

Substantial  evidence  amply  supports  the  ALJ's  determination  that  Plaintiff

experienced both a medical improvement and the ability to perform substantial gainful activity.   The ALJ noted that Plaintiff's ability to engage in a wide variety of activities undermined the claim of continued disability (Tr. 28).   The ALJ observed that the acknowledged activities included a variety of household and yard chores, door-to-door evangelizing, going to the library, using a computer, and socializing (Tr. 28).   Plaintiff argues that his ability to perform these activities does not establish the ability to work full time. *Plaintiff's Brief* at 8-9.   He notes that he requires "reminders" to complete household chores, attend Kingdom Hall services, or keep doctors' appointments. *Id.* at 8.   However the ALJ did not err in noting that Plaintiff's ability to engage in a wide range of activities requiring social, practical, and concentrational skills on a regular and continuing basis supported the conclusion that he was capable of a significant range of unskilled work (Tr. 28).

Further, even assuming that the ALJ accorded inflated weight to the regular activities, both the treating and non-treating psychological records overwhelmingly support the conclusion that Plaintiff's disability has ended.   Dr. Chung found consistently from January, 2010 forward that Plaintiff's bipolar disorder was in "full remission" (Tr. 194-240).   The same records show almost a complete lack of symptomology.   As noted by Plaintiff, an October, 2010 evaluation found that he required improvement in the areas structuring his time and handling future plans (Tr. 211).   However, the evaluation otherwise indicates that he did not experience  impairment in any other area of functioning aside from the need to be reminded to finish household chores (Tr. 211).   The one-time finding that Plaintiff should

develop better time management skills, by itself, does not contradict the ALJ's well supported RFC for "simple, unskilled tasks" (Tr. 27).

Plaintiff also argues that his limitation in concentration, persistence, and pace (*moderate* limitation as found by the ALJ) precludes all work. *Plaintiff's Brief* at 8-10 (Tr. 27). However, this argument should be rejected for multiple reasons. First, numerous courts in this district and elsewhere have found that moderate concentrational limitations are not work preclusive. *See Smith–Johnson v. Commissioner of Social Sec.*, 579 Fed. Appx. 426, 437-438, 2014 WL 4400999, *10 (6th Cir. September 8, 2014); *Lewicki v. Commissioner of Social Security*, 2010 WL 3905375, *2 (E.D.Mich. Sept.30, 2010); *Schalk v. Commissioner of Social Sec.,* 2011 WL 4406824, *11 (E.D.Mich. August 30, 2011); *Hess v. Comm'r of Soc. Sec.,* 2008 WL 2478325, *7 (E.D.Mich. June 16, 2008).

Second, the ALJ's finding that Plaintiff experienced moderate concentrational limitation (rather than the *marked* limitation found at the time of 2003 disability finding) is drawn directly from Dr. Balunas' June, 2011 findings and is thus supported by substantial evidence (Tr. 2 66, 278). Third, while Plaintiff argues that he has been hospitalized "multiple times," he does not dispute that he has not experienced *any* psychiatric hospitalizations since 2003. The fact that Plaintiff experienced multiple hospitalizations in 2002 and 2003 is wholly irrelevant to the question of whether his disability ceased as of May 1, 2011 (Tr. 30). Likewise, Plaintiff's testimony that he was unable to resume his former job due to his unwillingness to take his prescribed psychotropic medication refers to a period

-13-

shortly after the onset of disability in 2003 (Tr. 38-40).   Although Plaintiff seems to argue that he continues to experience marked psychiatric limitation, none of the records from the applicable period support the presence of marked limitations or other psychological limitations inconsistent with the ability to perform gainful employment.  As such, Plaintiff's argument that the ALJ failed to establish either "medical improvement" and/or the ability to engage in substantial gainful activity is without merit.

### B.  The ALJ's Rejection of Dr. Nucum's April, 2012 Opinion

Plaintiff also argues that the ALJ erred by rejecting Dr. Nucum's April, 2012 opinion. *Plaintiff's Brief* at 13-14 (*citing* Tr. 298).  He contends that the ALJ's improperly substituted his own judgment for that of the treating psychiatrist.  *Id.*

If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted) (*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir.2004); 20 C.F.R. § 404.1527(c) (2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)). In explaining reasons for rejecting the treating physician opinion, the ALJ must consider "the length of the ... relationship and the frequency of

-14-

examination, the nature and extent of the treatment [,] ... [the] supportability of the opinion, consistency ... with the record as a whole, and the specialization of the treating source." *Wilson*, at 544.

The ALJ's rejection of Dr. Nucum's opinion is well articulated and supported. My own review of the record supports the ALJ's conclusion that Dr. Nucum's opinion was "without any objective clinical or laboratory support" (Tr. 28). The ALJ noted that "[i]n fact," Dr. Nucum agreed with Dr. Chung's findings from earlier the same year showing that the bipolar disorder was in full remission (Tr. 28, 199, 294). My own review of Dr. Nucum's treating records shows that he repeatedly assigned Plaintiff a GAF of "55-60" which is wholly consistent with Dr. Chung's finding of a GAF of 56 (Tr. 199, 294-295). Because Dr. Nucum's "disability opinion" was contradicted by both his own treating records and those of another treating source, the ALJ did not err in rejecting it. *See Warner, supra,* at 391-392. Finally, Plaintiff's argument that the RFC for unskilled work found in the administrative opinion were not supported by the record should be rejected. *Plaintiff's Brief* at 13-14. The RFC for " simple, unskilled tasks . . . with no concentrated interaction with others" is strongly supported by Dr. Chung's findings, Dr. Balunas' finding that Plaintiff could perform unskilled work, and Plaintiff's own report of a wide range of regular activities.

In closing, I note that while Plaintiff has not presented a particularly strong case for continued benefits, his mental health progress and the absence of inpatient hospitalizations since 2003 should be commended. Accordingly, the ALJ's determination that Plaintiff was

-15-

no longer disabled, well within the "zone of choice" accorded to the fact-finder at the administrative hearing, should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

Accordingly, I recommend that Defendant's Motion for Summary Judgment [Docket #23] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #19] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: January 21, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 21, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager